**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **D.B.C. CORPORATION** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO: 4:22-cv-455** |
| | ) | |
| **RICHIN TRADING INC.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |
| | ) | |

## COMPLAINT

Plaintiff D.B.C. Corporation ("DBC" or "Plaintiff"), for its Complaint against Defendant

Richin Trading Inc. ("Richin" or "Defendant"), alleges and avers as follows:

## NATURE OF THE ACTION

1.      This is an action to enjoin wrongful conduct and collect damages stemming from

Defendant's pattern of acts of trademark infringement, trade dress infringement, dilution, and

unfair competition under the Lanham Act, as amended, 15 U.S.C. § 1051 *et seq*.; and trade mark /

trade dress infringement, and unfair competition under Texas law.

## JURISDICTION AND VENUE

2.      This Court has federal question jurisdiction over this action pursuant to 15 U.S.C.

§ 1121 and 28 U.S.C. § § 1331, 1338.  DBC's federal claims are predicated upon the Trademark

Act of 1946, as amended, 15 U.S.C. § 1501 *et seq*.  28 U.S.C. § 1367 gives this Court supplemental

jurisdiction over DBC's state-law claim because that claim is substantially related to DBC's

federal claims and arises out of the same constitutional case or controversy.

1

3.     Defendant is a foreign corporation conducting business within the State of Texas, by selling at least one infringing product subject to this action to a retailer in this judicial district. This Court has personal jurisdiction over Defendant pursuant to Texas's long-arm statute (Tex. Civ. Prac. & Rem. Code § 17.042) and Federal Rule of Civil Procedure 4(k).

4.     Venue is proper under, *inter alia*, 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred" in this "judicial district."

## PARTIES

5.     Plaintiff DBC is a Mississippi corporation with its principal place of business at 228 Industrial Drive North, Madison, Mississippi 39110.   Plaintiff bakes, sells, and distributes various lines of rolled wafer cookies lined with chocolate and/or filled with various crème fillings marketed under the names "Pirouline" and "Crème de Pirouline" through retail and other outlets across the continental United States (including in Texas) and Canada, as well as in Mexico, parts of Central and South America, the Middle East, China, Japan, the Philippines, Australia, and other countries or continents around the world.

6.     Upon information and belief, Defendant is a California corporation, with its principal place of business located at 400 S Date Ave., Alhambra, California 91803.

7.     As further described below, Defendant is engaged in a pattern of selling and distributing in the stream of commerce a number of products that infringe on DBC's federally registered trademark, as well as using packaging indicating that they contain products that infringe on DBC's federally registered trademark.   This Court's intervention is necessary to stop that pattern of infringement.

8.     DBC has obtained several of the products that Defendant's online products catalogue advertises for distribution and sale.  DBC's examination of those products shows that

both the products themselves, and their packaging, infringe DBC's federally registered trademark, as further shown below.

9.      At least one retailer in this judicial district sells at least one of these products.

10.     Defendant's online products catalogue shows it distributes and sells many varieties of other potentially infringing products in packaging that, from the catalogue's images, infringes on DBC's federally registered trademark.

11.     DBC has not yet been able to obtain exemplars of all of these products and packaging.  Some of the products have a stripe that infringers the trademark.  As to the other products, the catalogue's pictures establish, at the very least, packaging indicating that Defendant sells and distributes products infringing on DBC's federally registered trademark.  For some of these products, which DBC has not yet obtained, it is possible that the products themselves infringe DBC's federally registered trademark or, on the other hand, that Defendant or others have "photoshopped" or otherwise exaggerated some feature of the picture on the container or the catalog to suggest that the products bear a stripe that infringes the  mark.  However, if a product itself has only an indention or raised area on the surface of the wafer resulting from the manufacturing process, but that has been photographed so as to indicate an infringing stripe, still that false representation infringes on the trademark by attempt to capitalize on the trademark.  Even if examination of some products eventually showed show a particular product did not itself bear an infringing mark, the representation infringes on DBC's federally registered trademark.

12.     Defendant's catalogue shows Defendant has a pattern and practice, as well as a continuing business plan, of selling and distributing products and packaging infringing on DBC's federally registered trademark.

13.     As further described below, only the remedies DBC seeks, including injunctive relief, will stop Defendant's pattern, practice, and continuing business plan of infringement.

## FACTS COMMON TO ALL COUNTS

### DBC CORPORATION AND DBC'S RIGHTS

14.     Plaintiff DBC is a unique company, tracing its humble roots back to 1860's Belgium, where the De Beukelaer family first began baking.  In the early 1980's, a member of the original De Beukelaer family, Peter De Beukelaer, moved to the United States, bringing with him over 150 years of family heritage, knowledge, and skill baking premium specialty cookies.  Mr. De Beukelaer founded D.B.C. Corporation and continued producing the "Pirouline" rolled wafer cookie and chocolate-lined rolled wafer cookie in the United States.   In the early 1990's, D.B.C. began producing sweet rolled wafer cookies with crème under the name "Crème de Pirouline." DBC continues to make, market and sell all of these Pirouline products today.

15.     DBC has invested substantial time, effort, and money into building, developing, and maintaining its brands and its products, including the Pirouline and Crème de Pirouline rolled wafer cookies, which it has popularized worldwide.  Today, DBC is the exclusive producer of the Pirouline products, which have expanded to include dark chocolate, chocolate hazelnut, and vanilla flavors, as well as seasonal strawberry and lemon flavors.

16.     DBC currently owns U.S. Trademark registrations for the use of the distinctive marks "PIROULINE" and "CRÈME DE PIROULINE" in connection with the marketing, sale, and distribution of its premium specialty rolled cookie products.

17.     DBC has also used and exhibited a certain distinctive trade dress in connection with the marketing, sale, and distribution of the Pirouline artisan rolled wafer since the product was first created.  The Pirouline trade dress consists of a helical line formed in and extending the length of

a cylindrical cookie, in a color which contrasts with the cookie (the "Helical Stripe Mark").

Example images are reproduced below, for the Court's reference:







18.     DBC owns U.S. Trademark Registration No. 1,634,930 for the distinctive Helical

Stripe Mark associated with its Pirouline products, which has been registered with the United

States Patent and Trademark Office since 1991.  *See* Exhibit 1 (United States Patent and Trademark

Office, Trademark Electronic Search System (TESS) Registration Record (last updated Feb. 10, 2022)).

19.     In addition to being a distinctive characteristic of the Pirouline products themselves, DBC's signature Helical Stripe Mark is also prominently displayed and promoted on the products' packaging and promotional materials, as well as through DBC's website and advertising, including on the packaging for other DBC products, such as its seasonal lines.  This Helical Stripe Mark is well-known in the industry and widely associated with DBC and the products at issue.

20.     DBC sells and distributes its Pirouline products through various third-party retail stores and the internet, including its own company website, through which it offers for sale and has sold the Pirouline products, as well as a wide variety of its other premium specialty cookie products, throughout the United States and the world, including this judicial district.  DBC has been engaged in the sale and/or offering for sale of its products, including the Pirouline products, continuously since the early 1980's.

21.     As a result of DBC's extensive use and promotion of its distinctive Helical Stripe Mark in connection with the Pirouline products, the mark has acquired substantial recognition among the public, and the public associates the signature Helical Stripe Mark with DBC and its products.

22.     DBC's Helical Stripe Mark is used and highlighted extensively in connection with DBC's advertising and promotional materials, on DBC's website, and in various non-affiliated retail stores (both brick and mortar and online) that sell DBC's Pirouline and other products.

23.     DBC has expended considerable resources to create and develop its unique Helical Stripe Mark in connection with the marketing, sale, and distribution of its Pirouline products.  As

a result of DBC's substantial and significant sales, advertising, promotion and publicity, the Helical Stripe Mark is recognized as emanating from, or being associated with DBC.

24.     DBC's Helical Stripe Trade Dress is distinctive and is recognized by members of the consuming public as an indicator of high-quality products associated with DBC.

25.     With permission from DBC, the Pirouline products, featuring the distinctive Helical Stripe Mark, have appeared or been used in connection with various other products sold by some of the largest retailers/manufacturers in the US and Canada, but each time with the disclaimer that the Helical Stripe Mark is a registered trademark of DBC.

<u>DEFENDANT RICHIN TRADING INC, AND ITS INFRINGING ACTS</u>

26.     According to Defendant's website (www.richintrading.com) as of the date of this Complaint's filing, Defendant is a "Specialist in Canned and Dry Food Wholesale Since 1989."

27.     Defendant sells and distributes various food products, at least in part through its publicly available online products catalogue, which its website represents is a "list of our products."  This catalogue is attached as Exhibit 2 to this Complaint.  *See generally* Exhibit 2 (Richin Trading Inc. Products Catalogue, publicly available at http://www.richintrading.com/wp-content/uploads/2021/08/CATALOG-NO-UPC.pdf as of the date of this Complaint's filing).

28.     It is unclear to DBC whether this online products catalogue represents a complete listing of the products Defendant sells and distributes in the stream of commerce.

29.     Based on the images available in Defendant's online products catalogue and DBC's pre-suit investigation, numerous products, including at the very least the following cylindrical rolled wafer cookie products and associated packaging, marketed, sold, and distributed by Defendant in the stream of commerce, are subject to this action:

a. "UeNo Dora Magical Tales" "egg roll" products in a variety of flavors, including chocolate, strawberry, coconut, coffee vanilla strawberry assortment, and coffee.  *See* Exhibit 2 at 59–60.

b. "Wafer Sticks" marketed and sold with the name "Hello Kitty Poppipe."  *See* Exhibit 2 at 66.

c. DBC refers to the "UeNo Dora Magical Tales" and "Hello Kitty Poppipe" products collectively as the "Known Infringing Products."

30.     Exhibit 3 to this Complaint shows pictures of Known Infringing Products and their packaging, taken during DBC's pre-suit investigation.  The Known Infringing Products are the ones DBC has been able to obtain and confirm infringe.  These pictures are reproduced below for this Court's convenience.  *See* Exhibit 3.

**KNOWN INFRINGING PRODUCT:  Ueno Dora Magical Tales**



**KNOWN INFRINGING PRODUCT:  Ueno Dora Magical Tales**



**KNOWN INFRINGING PRODUCT:  Hello Kitty Poppipe**



31.     Like DBC's Pirouline and Crème de Pirouline products, Defendant's Known Infringing Products exhibit a helical stripe extending the length of a cylindrical cookie, in a color contrasting with the cookie (the "Infringing Trade Dress").

32.     After DBC invested substantial time, effort, and expense in developing, marketing, and attaining extensive sales of its Pirouline products with the Helical Stripe Mark, Defendant began offering to sell and marketing and selling similar cylindrical rolled wafer cookie products (*i.e.*, the Known Infringing Products) which it marketed and sold to substantially similar consumers.

33.     At least one retailer in this judicial district sells the "Hello Kitty Poppipe" Known Infringing Product to the consuming public.

34.     Defendant's online products catalogue offers to sell and distribute the UeNo Dora Magical Tales Known Infringing Products in several flavors and types of packaging.

35.     DBC has thus far obtained the chocolate flavor of the UeNo Dora Magical Tales Egg Rolls Known Infringing Product, in two different types of packaging (plastic tin; cardboard box).  As Exhibit 3 demonstrates, the products themselves look identical, and they infringe DBC's Helical Stripe Mark, as does the packaging for each.

36.     Upon information and belief, the various other products in the UeNo Dora Magical Tales Egg Rolls line (*i.e.,* the other flavors), which Defendant sells and distributes through its online products catalogue, will all likewise infringe DBC's Helical Stripe Mark, as will their packaging.

37.     The flavors in which Defendant offers its Known Infringing Products overlap with those DBC offers for its Crème de Pirouline cookies.

38.     As stated, Exhibit 2 to this Complaint provides Defendant's publicly available online product catalogue.  The catalogue shows images of products' packaging that Defendant advertises for sale and distribution.  From Exhibit 2, DBC reproduces products in the same UeNo Dora Magical Tales line, just in different packaging and/or flavors from the UeNo Dora Magical Tales products DBC has thus far obtained.  *See* Exhibit 2.

**KNOWN INFRINGING PRODUCT:  Ueno Dora Magical Tales**



**KNOWN INFRINGING PRODUCT:  Ueno Dora Magical Tales**



12732                                    6X500G

UENODORA STRAW. EGGROLL

**KNOWN INFRINGING PRODUCT:  Ueno Dora Magical Tales**



12733                    6X500G

UENODORA COCO. EGGROLL

**KNOWN INFRINGING PRODUCT:  Ueno Dora Magical Tales**



12734                                6X500G

UENODORA COFFEE EGGROLL

**KNOWN INFRINGING PRODUCT:  Ueno Dora Magical Tales**



12706                    24X120G

UENODORA CHOCOLATE EGGROLL

**KNOWN INFRINGING PRODUCT:  Ueno Dora Magical Tales**



# 12707

### 24X120G

UENODORA STRAWBERRY EGGROLL

**KNOWN INFRINGING PRODUCT:  Ueno Dora Magical Tales**



12708                        24X120G
UENODORA COFFEE EGGROLL

**KNOWN INFRINGING PRODUCT:  Ueno Dora Magical Tales**



# 12709       24X120G
## UENODORA COCONUT EGGROLL

39.     The packaging for at least one of the Known Infringing Products also bears a California Proposition 65 warning that "Consuming this product can expose you to chemicals including Lead and Cadmium, which are known to the State of California to cause cancer and birth defects, or other reproductive harm.  For more information go to www.P65Warnings.ca.gov/food"; or, on other product packaging, "Consuming this product can expose you to chemicals including Lead, Cadmium, and Acrylamide, which are known to the State of California to cause cancer and birth defects, or other reproductive harm.    For more information go to www.P65warnings.ca.gov/food."  Exhibit 4 (reproduced below for convenience):

**KNOWN INFRINGING PRODUCT:  Ueno Dora Magical Tales**



**KNOWN INFRINGING PRODUCT:  Ueno Dora Magical Tales**



40.     Defendant offers the Known Infringing Products for sale and distribution in packaging prominently displaying a helical stripe on a rolled wafer cookie product that infringes on DBC's federally registered trademark.

41.     Upon information and belief, given the known sales of the "Hello Kitty Poppipe" Infringing Product at a retailer in this judicial district, DBC expects discovery will uncover Defendant's sales and distribution of the Known Infringing Products, and potentially other infringing products not presently known, to retailers throughout the United States and in Texas, including episodic sales to various individual local specialty retailers.  Upon information and

belief, due to their episodic nature, Defendant's sales and distribution to these individual local specialty retailers are not otherwise easily documented.

42.     Defendant's online product catalogue also offers for sale and distribution in the stream of commerce various rolled wafer cookie products in packaging prominently and impermissibly displaying DBC's federally registered trademark.  These products, listed below, are also subject to this action, at the very least due to this infringing packaging.

a.   "Assorted Cookies" marketed and sold with the names "I do" and "Lover."  *See* Exhibit 2 at 64.

b.   "Assorted Biscuits" marketed and sold with the name "Celebrity."  *See* Exhibit 2 at 68.

c.   "Cookies Gift Box" marketed and sold with the name "Euro Tea Time."  *See* Exhibit 2 at 68.

d.   DBC refers to the "I do," "Lover," "Celebrity," and "Euro Tea Time" packaging collectively as the "Known Infringing Packaging."

e.     The images of the Known Infringing Packaging, as Defendant's online products catalogue shows them, are reproduced below for the Court's convenience.  *See* Exhibit 2.  For clarity, these are products DBC has not yet obtained but which Defendant's catalogue markets with packaging that either infringes on DBC's federally registered trademark or has been Photoshopped or otherwise edited to make it appear so.

**KNOWN INFRINGING PACKAGING:  I do Assorted Cookies**



12540                         6X600G.
BELLIE I DO ASSORTED COOKIES

**KNOWN INFRINGING PACKAGING:  Lover Assorted Cookies**



12541                          6X600G.

BELLIE LOVER ASSORTED COOKIES

**KNOWN INFRINGING PACKAGING:  Celebrity Assorted Biscuits**



12019                                    6X800G.
ORI CELEBRITY ASSORTS

**KNOWN INFRINGING PACKAGING:  Euro Tea Time Cookies Gift Box**



# 12808     6X580G
## SHJ EURO TEA TIME COOKIES GIFT BOX

43.     Like the packaging for DBC's Pirouline and Crème de Pirouline products, the Known Infringing Packaging prominently displays the helical stripe on a rolled wafer cookie product.

44.     Upon information and belief, DBC expects discovery will reveal whether the rolled wafer cookie products Defendant sells and distributes in the Known Infringing Packaging themselves also infringe DBC's federally registered trademark by using the Infringing Trade Dress; or if Defendant has just photoshopped or otherwise edited the product packaging to make it appear as if the products themselves bear DBC's federally registered trademark.

45.     Even if examination of any of the actual cylindrical rolled wafer cookie products Defendant sells and distributes in the Known Infringing Packaging revealed the cookie product itself did not bear an infringing helical stripe, the packaging would remain an infringement of DBC's federally registered trademark because the packaging prominently displays the Infringing Trade Dress.

46.     After DBC invested substantial time, effort, and expense in developing, marketing, and attaining extensive sales of its Pirouline products in packaging using the Helical Stripe Mark, Defendant began offering to sell and marketing and selling similar cylindrical rolled wafer cookie products, which it marketed and sold to substantially similar consumers, in packaging also using DBC's Helical Stripe Mark.

47.     Upon information and belief, DBC expects discovery will uncover Defendant's sales and distribution of the products in the Known Infringing Packaging, and potentially other infringing packaging not presently known, to retailers throughout the United States and in Texas, including episodic sales to various individual local specialty retailers.  Upon information and

belief, due to their episodic nature, Defendant's sales and distribution to these individual local specialty retailers are not otherwise easily documented.

48.     Defendant's use of a helical stripe extending the length of the Known Infringing Products and Known Infringing Packaging infringes on DBC's protected rights in its registered Helical Stripe Mark.

49.     As Defendant's online product catalogue, the Known Infringing Products, and the Known Infringing Packaging all demonstrate, Defendant is engaged in a pattern and practice of selling and distributing in the stream of commerce products and packaging infringing upon DBC's Helical Stripe Mark.

50.     Upon information and belief, based on what DBC is presently able to understand from the Known Infringing Products' labeling and the Known Infringing Packaging, Defendant is engaged in a pattern of selling and distributing the Known Infringing Products and products in the Known Infringing Packaging in the U.S. stream of commerce for various foreign manufacturers, whose precise legal identities are presently unknown.

51.     Upon information and belief, Defendant may also be selling and distributing other infringing products or other products in infringing packaging, not presently identifiable from Defendant's online product catalogue, to various retailers in the stream of commerce, for various foreign manufacturers whose precise legal identities are presently unknown.

52.     Both Defendant and DBC transact business through interstate commerce.

53.     Upon information and belief, Defendant is and has been aware of DBC's federal registration for the Helical Stripe Mark; and its creation, sale, and/or use of the Infringing Trade Dress has been done willfully in an effort to impermissibly copy DBC's Helical Stripe Mark, to

trade on the goodwill created by DBC in its registered mark, and to mislead customers into believing there is an association between Defendant and DBC.

54.     Defendant's pattern of appropriating DBC's trade dress is likely to cause confusion, mistake, or deception as to the source or origin of Defendant's products because of the similarity of the helical stripe design and the relatedness of Defendant's products to those of DBC.

55.     Indeed, a consumer blog post, reviewing one of the Known Infringing Products, describes that product as "sort of an Asian version of [P]irouline."  Exhibit 5 (UeNo Dora Magical Tales:  Coconut Flavoured Egg Rolls – review, Marga's Food Blog (Nov. 11, 2020), https://www.marga.org/foodblog/2020/11/ueno-dora-magical-tales-coconut-flavoured-egg-rolls-review/.)

56.     Upon information and belief, Defendant, by its willful conduct, has made and will continue to make substantial profits and gains to which it is not entitled by law or equity.

57.     Because of Defendant's demonstrated propensity to engage in a pattern, practice, and business plan of infringing conduct, DBC has suffered and will continue to suffer damage unless enjoined by this Court.  DBC is without an adequate remedy at law and is suffering irreparable harm.

58.     DBC lacks an adequate legal remedy, and is suffering irreparable harm, for many reasons.  Absent an injunction, Defendant will be able to continue selling and distributing infringing products using infringing packaging.  This will cause continuing confusion among consumers and will also weaken DBC's federally protected trademark.  Moreover, only an injunction will prevent Defendant from being able to act on its demonstrated propensity to sell and distribute new infringing products and/or using new infringing packaging.  Without an injunction, DBC would be required to continuously file new lawsuits each time Defendant does so.

59.     Only the relief DBC seeks from this Court, further described below, will stop Defendant's pattern, practice, and business plan of selling and distributing the Known Infringing Products, and any other infringing products or packaging Defendant may also be selling and distributing.

60.     Only the relief DBC seeks from this Court, further described below, will stop Defendant's pattern, practice, and business plan of settling and distributing products in the Known Infringing Packaging, and any other infringing products or packaging Defendant may also be selling and distributing.

**COUNT I**

**FEDERAL TRADEMARK INFRINGEMENT**
**Section 32 of the Lanham Act, 15 U.S.C. § 1114**

61.      DBC re-alleges and incorporates by reference all of the allegations set forth in all preceding paragraphs as if fully set forth herein.

62.     Defendant's use of the Infringing Trade Dress, on both the products it sells and distributes and the packaging in which it does so, is likely to cause confusion, mistake, or deception among customers and the public with DBC's U.S. Trademark Registration No. 1,634,930, including but not limited to confusion, mistake, or deception as to the source or origin of Defendant's products, in that consumers are likely to believe that Defendant or its products are legitimately connected with DBC.

63.     Defendant has used the Infringing Trade Dress without DBC's consent.

64.     As detailed above, Defendant has created, marketed, and/or sold products that look nearly identical to DBC's Pirouline and Crème de Pirouline artisan rolled wafers and exhibit trade dress that is confusingly similar to DBC's federally registered trade mark, in violation of 15 U.S.C. § 1114; and unless prohibited by this Court, Defendant's activities are likely to cause confusion

and deception to members of the trade and the public, as well as injury to DBC's goodwill and reputation as symbolized by its federally registered marks, for which DBC has no adequate remedy at law.

65.     Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with DBC's federally registered trademark to DBC's irreparable injury.

66.     Defendant has caused and is likely to continue causing substantial injury to the public and to DBC, and DBC is entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorney's fees under 15 U.S.C. § § 1114, 1116, and 1117.

## COUNT II

### TRADE DRESS INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, PASSING OFF, AND UNFAIR COMPETITION
### (Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

67.     DBC re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs as if set forth in full herein.

68.     DBC's Helical Stripe Mark is entitled to protection because it is inherently distinctive and non-functional and/or has acquired distinctiveness.

69.     Defendant's use of the nearly identical Infringing Trade Dress is likely to cause confusion with DBC's federally registered Helical Stripe Mark.

70.     Defendant's use of the Infringing Trade Dress constitutes false designation of origin or sponsorship of Defendant's products and tends falsely to represent that Defendant's products originate from DBC or that Defendant's products have been sponsored, approved, or licensed by DBC or are in some way affiliated or connected with DBC.

32

71.     Defendant's conduct is likely to confuse, mislead, and deceive Defendant's customers, purchasers, and members of the public as to the origin of Defendant's products or cause said persons to believe that Defendant's products and/or Defendant have been sponsored, approved, authored, or licensed by DBC, or are in some way affiliated or connected with DBC, all in violation of 15 U.S.C. § 1125(a).

72.     Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with DBC's federally registered trademark to DBC's irreparable injury.

73.     Defendant has caused and is likely to continue causing substantial injury to the public and to DBC, and DBC is entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits, and damages, costs, and reasonable attorney's fees under 15 U.S.C. § § 1114, 1116, and 1117.

## COUNT III

### TRADEMARK DILUTION
### (Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c))

74.     DBC re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs as if set forth in full herein.

75.     DBC owns the Helical Stripe Mark.

76.     DBC's Helical Stripe Mark, registered on the USPTO Principal Register, is non-functional and is famous, as "famous" is used in 15 U.S.C. § 1125(c), due to its inherent or acquired distinctiveness, and the duration, extent, and geographic reach of advertising, publicity of the mark, and sales of the Pirouline and Crème de Pirouline products featuring the mark.  By way of example, DBC sells its products featuring the Helical Stripe Mark throughout the United States.  DBC also advertises its products featuring the Helical Stripe Mark throughout the United

States.  Furthermore, DBC's Helical Stripe Mark was famous before Defendant's first use of the Infringing Trade Dress, based on, among other things, DBC's extensive nationwide use, advertising, promotion, and recognition of the Helical Stripe Mark.

77.    As described above, the Helical Stripe Mark is distinctive.

78.    Like DBC's products, the Known Infringing Products are cylindrical cookies.

79.    The similarity between DBC's Helical Stripe Mark and the helical stripe on Defendant's Known Infringing Products gives rise to an association between the two marks.

80.    The similarity between DBC's Helical Stripe Mark and the helical stripe on Defendant's Known Infringing Packaging gives rise to an association between the two marks.

81.    Defendant's actions, as described above, are likely to dilute the distinctive quality of DBC's Helical Stripe Mark by blurring, in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), as amended by the Trademark Dilution Revision Act of 2006.

82.    Defendant's actions, as described above and including the warning that consumption of at least one Known Infringing Product may expose the consumer to known carcinogens lead, cadmium, and acrylamide are also likely to dilute DBC's Helical Stripe Mark by tarnishing the Helical Stripe Mark's reputation, in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), as amended by the Trademark Dilution Revision Act of 2006.

## COUNT IV

## TRADMARK INFRINGEMENT ANDUNFAIR COMPETITION
## UNDER TEXAS COMMON LAW

83.    DBC re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs as if set forth in full herein.

84.    DBC's Helical Stripe Mark is eligible for protection, as it identifies and distinguishes DBC's goods from those of others.

85.     DBC is the senior user of the Helical Stripe Mark vis-à-vis Defendant.

86.     Defendant's actions, as described above, are likely to cause confusion or mistake, or to deceive the public, as to an affiliation, connection, or association between DBC and Defendant.

87.     Defendant's actions, as described above, are likely to cause confusion or mistake, or to deceive the public, as to the origin, sponsorship, or approval of Defendant, the products it sells, its services, or its commercial activities.

88.     Defendant's actions constitute infringement of DBC's rights in its Helical Stripe Mark, misappropriation of DBC's goodwill in the mark, and trademark infringement and unfair competition under Texas common law.

89.     Defendant's actions as described above constitute material misrepresentations as to its affiliation, connection, or association of Defendant with DBC, or as to the origin, sponsorship, or approval of DBC, its products, its services, and its commercial activities by or with DBC.  These material misrepresentations have caused or are likely to cause diversion of trade or harm to the goodwill of DBC and constitute trademark infringement and unfair competition under Texas common law.

90.     As described, DBC is suffering ongoing injury from Defendant's continuing pattern, practice, and business plan of infringement and will continue to do so until Defendant is enjoined from infringing on DBC's Helical Stripe Mark.

## JURY DEMAND

91.    Plaintiff DBC demands a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff DBC respectfully requests that the Court enter judgment in its favor on each Count set forth above and award it relief, including but not limited to the following:

A.    An Order declaring that Defendant's use of the Infringing Trade Dress, on the Known Infringing Products, their packaging, the Known Infringing Packaging (as well as any other infringing products and/or their packaging, to be identified in discovery) infringes and dilutes DBC's Helical Stripe Mark and constitutes unfair competition under federal and/or state law as detailed above.

B.    Preliminarily and permanently enjoin and restrain Defendant from:

1.    using, registering, or seeking to register its Infringing Trade Dress or any other marks, logos, designs, designations, or indicators that are confusingly similar to or dilutive of DBC's Helical Stripe Mark in manners likely to cause confusion or dilution with DBC's Helical Stripe Mark, including but not limited to product packaging;

2    representing by any means whatsoever, directly or indirectly, that Defendant, or any products or services offered by Defendant or any activities undertaken by Defendant, are associated or connected in any way with DBC or sponsored by or affiliated with DBC in any way, including but not limited to product packaging; and

3.    doing any acts calculated or likely to cause confusion or mistake in the mind of the public or the trade or to lead persons into the erroneous belief that

Defendant or any of Defendant's products are associated with DBC, including but not limited to product packaging;

C.      Direct Defendant to destroy all materials in its possession, custody, or control which use or otherwise contain the Infringing Trade Dress, including all products, labels, tags, boxes, signs, packages, forms, advertisements, bags, or other materials;

D.      Require Defendant, under 15 U.S.C. § 1117, as well as Texas law, to account to DBC for any and all profits derived by it, and for all damages sustained by DBC by reason of the infringement;

E.      Require Defendant, under 15 U.S.C. § 1117, as well as Texas law, to account to DBC for any and all profits derived by it, and for all damages sustained by DBC by reason of Defendant's acts complained of herein;

F.      Impose treble damages against Defendant for its willful trademark infringement, under 15 U.S.C. § 1117;

G.      Award DBC its reasonable attorney's fees, costs, and disbursements incurred on account of this civil action; and

H.      Award DBC such other and further relief as the Court may deem just and proper.

**Dated: February 10, 2022**

Respectfully Submitted,



By:     */s/ Robert H. Ford*
           Robert H. Ford
           Federal ID No. 1392569
           Texas Bar No. 24074219
           rford@bradley.com
           600 Travis Street, Suite 4800
           Houston, Texas 77002
           (713) 576-0300 Telephone
           (713) 576-0301 Telecopier

           **COUNSEL OF RECORD FOR**
           **PLAINTIFF, D.B.C. CORPORATION**